24-1403-1404 Georgia-Pacific Consumer Products L.P. et al. v. NCR Corp. et al. Argument is not to exceed 15 minutes to be shared by the appellants and 15 minutes for the appellees. Mr. Houston, you may proceed for the appellant. Thank you. May it please the Court. I'm Michael Houston of Perkins Coie. I'll be presenting oral argument this afternoon on behalf of both the defendants' appellants, Weyerhaeuser, and International Paper Company. The district court on remand grounded its declaratory judgment of liability on CERCLA Section 107. It entered, quote, a declaratory judgment finding all three parties liable under Section 107 for future response costs. But both the text of CERCLA Section 113-G2 and basic principles of federal remedies establish that a district court cannot enter a judgment, be it a declaratory judgment or any other kind, without a valid 107 cause of action. And this court already determined in the last appeal when this case was here that Georgia-Pacific has no Section 107 cause of action against these defendants for these response costs. Well, I mean, that's true. I mean, within the area of the 98 judgment, right? Or within the scope? That's correct. Yes. And so, and I guess your argument is that the particular costs that were the predicate for this 2011 action were themselves within the original 35-mile area, right? And so you would say those are clearly within the scope of the old judgment and thus cannot support a 107 action, right? Your Honor, I think that the scope of the judgment entered by the district court from the last time to now has not changed. It was the same judgment that came to this court in the last appeal. The district court simply re-entered it on remand. The last time that we were in front of this court, I think the court clearly held that the judgment that was entered by the district court corresponded to the same 1998 KRSG judgment. That's why that judgment started Georgia-Pacific's statute of limitations. And the necessary corollary of that is that Georgia-Pacific did not also have a Section 107 action. That's this court's holding in Hobart. If, like Georgia-Pacific, you have a 113F cause of action for contribution, you do not have a 107 action. No, I get that part. Well, I'll let Judge Morris question. I am curious. No one seemed to argue against the declaratory judgment aspect going forward, which is a finding simply of liability. That wasn't argued in front of us, as I recall. And why should we not affirm the district court on that limited aspect? Judge Moore, I would urge the court to take a look at the brief to this court filed by International Paper at page 40. It argued the last time that this court should reverse the entire judgment in Georgia-Pacific's favor, including the declaration of liability. IP said at page 30, quote, Georgia-Pacific's claims under both 113F and 107A are barred as a matter of law. So this court should reverse the district court and enter judgment for IP. I certainly take your point that the thrust of the court's last opinion was the contribution claim under 113F. But certainly at page 548 of the opinion, the court discussed whether and to what extent Georgia-Pacific had any 107A claims. And what it said is, applying Hobart, Georgia-Pacific has no 107A claim for any costs within the scope of the KRSG judgment. The only 107 claim would be for a new action for different costs outside that scope. Did Weyerhaeuser concede liability in the district court? Judge Moore, Weyerhaeuser entered a limited stipulation to two elements of liability under CERCLA. But Weyerhaeuser did not concede that Georgia-Pacific was entitled to a declaration of liability against it. Indeed, Weyerhaeuser's stipulation reserved, quote, all other issues, including, quote, the recoverability of response costs. That's page ID 9012 in the district court record. So, again, that was a limited stipulation at a time when the district court had rejected the statute of limitations defense asserted by Weyerhaeuser. Weyerhaeuser, I think it's just, you know, it's best understood as just a conditional stipulation to two particular elements of the liability standard. But it certainly was not an admission that Weyerhaeuser is liable. And I think all parties understood that Weyerhaeuser was going to be entitled to contest the district court statute of limitations ruling. Given the amount of effort that went into the trial at the district court, so many different two different district judges, a lot of different proceedings, many days of trial. Why doesn't it make sense to retain the determination of liability? All it is is saying that you three companies are liable. It's not giving percentages. It's just saying liability. Is there any ground to debate liability? Yes, there is, Judge Moore. And if I might give two responses to your question, why I think it's not appropriate, it's not fair, it's not permissible to retain that judgment. The first is just simply the text of the statute. No matter how practical it might be, CERCLA does not allow a court to enter a judgment of liability that's going to be preclusive, arguably, in future actions, unless the party seeking that judgment, in this case, Georgia Pacific, has a valid cause of action. And our fundamental submission to the court is that under the Supreme Court's decision in Atlantic Research, this court's decision in Hobart, and this court's last opinion, Georgia Pacific simply has no cause of action that can support its judgment. I think the second important answer to your question is that international paper definitely does contest its liability, period, based on the secured creditor defense. An international paper said we could decide the prior case either on the secured creditor or on the question of the statute of limitations. That's exactly right, Judge Moore, and I think that proves exactly what's wrong with the district court's judgment. If this court wanted to leave intact last time a judgment of liability against international paper, it would have needed to confront and reject that defense that international paper had asserted. But the court recognized correctly that those were alternative grounds for dismissing the judgment against international paper. And so it's precisely because this court's last opinion determined that both Georgia Pacific has no Section 107 claim and its only remaining cause of action under 113 was time barred, that those holdings were sufficient to dispose of the entire judgment. Again, if the court wanted to leave intact this judgment against international paper, it would obviously confront the secured creditor defense. The fact that the court determined it did not need to do so is, I think, very strong evidence that the court rejected the entire judgment, which is what it said in its opinion, and that's also how Georgia Pacific's en banc petition understood it. Go ahead. OK, I mean, sort of a load start here is the scope of the 98 judgment. And I gather that international paper is not doesn't really want to get into this issue and this appeal. But it seems to me that I mean, why isn't the geographical scope of the 98 judgment something that's material here? I mean, if and I can imagine that could be subject to litigation of its own. But if if Georgia Pacific, let's say in the future, had costs outside of that original 35 mile area and, you know, I mean, it's expanded to 75 miles now. Why would a one oh seven action for those costs outside of the original geographic area of the 98 judgment? Why would that be bound or what barred in the same way that a cost an action for costs within it? So, Judge Kethledge, I think a couple of points about that. The first is that all parties before you agree that the geographic scope of the KRG judgment is not presented to this court in this case. I just that that being said, I just have a hard I like to understand what we're deciding, what we're the rationale. And I I'm struggling to see how that isn't material to the scope of the 98. Sure, understood, Your Honor. So the answer is that the 98 judgment and it was the was what triggered Georgia Pacific's statute of limitations for contribution. I think that's the unmistakable holding of this court in its last opinion. Another unmistakable holding of the court in that same opinion is that because that judgment triggered Georgia Pacific's contribution claim, it also foreclosed a one oh seven claim. And that's what Georgia Pacific is. I don't think there's any dispute that Georgia Pacific, the action that it brought to in this action to recover costs within the scope of the KRG judgment. That's why this court reversed that judgment last time around. Well, I get that. But let me ask you just hypothetically. Let's say three years from now or whatever, five years from now, Georgia Pacific has incurred costs in what I call the area of expansion. That's the way I think of it. The other forty five miles. I mean, why wouldn't they be able to bring a one oh seven action? Let's say they've never been subject to a declaratory judgment, I guess. Maybe this is the merits of the geography, but, you know, the 98, as a matter of fact, is speaking to thirty five miles. And if they have future costs outside of that, why can't they bring a one oh seven based on those costs? So I think being outside the scope of the 98 judgment, I think if I might answer the question in two parts, whatever the scope of the 98 judgment is, I'm going to come to that in just one moment. Whatever the scope of that judgment is, the court said that if there are new costs that are outside that scope that have never previously been adjudicated, Georgia Pacific may be able to bring an action for them. No contest about that. But that's not this case. Georgia Pacific refers to that as a as yet hypothetical action. I think the soundest thing for this court to say in its opinion is if Georgia Pacific brings that case one day, the court will confront it. It can adjudicate any defenses that the party parties might raise. The second thing I just want to give the second point. Have you brought an action already yourselves against Georgia Pacific? Would that be one of those examples? So, Judge Moore, I think that there's two. I want to be precise in answering your question. There were counterclaims filed by these defendants, Georgia Pacific. Excuse me. International Paper and Weyerhaeuser did file counterclaims in this action. There's also other litigation that has transpired insofar as that other litigation corresponds to response costs that were incurred in the first instance by, say, IP. International Paper is going to have a 107 action, but we can't sit. You know, that's the proper case in which to determine whether the liability of any parties and any applicable defenses. It's just not before the court in this case. I think it's common before the district court and the district court had a long trial on this and came to the conclusion that IP and Weyerhaeuser and Georgia Pacific were all liable parties. Yes, that's true, Judge Moore. But the problem with that is that the district court entered, conducted that trial and entered that judgment based on the mistaken premise that Georgia Pacific had a valid cause of action. And that's exactly what this court said last time when the case became final and became appealable. The court said that Georgia Pacific had only one and only one claim under 107, not under one. Excuse me. Georgia Pacific had only one claim under 113, not under 107. And the claim that Georgia Pacific attempted to bring under 113 was untimely because they missed the statute of limitations. So, yes, the district court held a trial, but that trial occurred after the district court had rejected our legal defenses. And I think this court's opinion in the last in the last appeal explains why the district court's preliminary holdings on that statute of limitations and cause of action point were erroneous. So I guess you're saying that the geographic scope that we would give to the 98 judgment in the future is something that would need to be litigated when those when, say, Georgia Pacific actually assert something, say, closer to the mouth of the river by Lake Michigan. Is that what you're saying? Yes, yes, that is right. Judge, Georgia. If Georgia Pacific wants to come to court and say this is a new portion of the river site, a new response costs that are not within the scope of the judgment, it's going to have an opportunity to assert that claim. Georgia Pacific is up front with the court about the fact that it has not yet brought that claim. I think the right thing for this court to do is say if Georgia Pacific brings that cause of action, we'll adjudicate the scope of the KRSG judgment then. Now, I think I might disagree. I think I just do emphatically disagree with your honor, in fact, about the scope of the KRSG judgment. We think that the KRSG judgment is the entire site, the whole 95 miles. But it was 35 at the time. So it was why would we say and it didn't have catch all language either, like, you know, and if there are any expansion, whatever. I mean, it just it's talking about a defined 35 miles that isn't the whole site now. So your honor, 35 miles was the original designation that when the case started, that's true. But by the time the KRSG litigation got to judgment, the court was adjudicating a much larger site. The easiest way to know that that's true is that the court adjudicated the liability of parties like Rockwell and Eaton who were outside that 35 miles. But and we're down in the larger 95 miles. But again, none of this. I know. I understand. OK, I see that your time is up. And thank you. I think your counsel was going to make an argument for two minutes. You may have pleased the court. I'm John Parker. I have the pleasure of representing international paper. Mr. Houston and I decided that he could take the bulk of this argument and I would reserve time only if the court asked a question unique to international paper. Having heard no such question that Mr. Houston didn't answer. I'm curious about what your other lawsuit is that you brought. Judge Moore, there have been other costs incurred by the parties since the trial occurred before Judge Yonker. That lawsuit is. And there's an agreement. I know this isn't in the record, but there's an agreement between the parties as to sharing those costs and how they will be split up depending upon the judgment. We are concerned that if a judgment of liability. And by the way, I should add, all of those costs were incurred within what Judge Kessler would call the original site within the 35 miles. They are within what's known as OU five area one and three. The finding of liability would affect the outcome of that. In addition. So you want to have a chance to re argue and develop evidence supporting your argument that you are not liable? I believe the court found last time that we were not liable because Georgia Pacific. For all the reasons Mr. Houston talked about, that there is no one valid one of seven claim that Georgia Pacific has within the original site, regardless of its size. And so, therefore, based upon that, that will affect how the parties allocate costs going forward under those cost sharing agreements. Well, under under your view of the case, then you want us to overturn what Judge Yonker did and saying that you and Weyerhaeuser as well as Georgia Pacific were liable. So that presumably you would then get a whole new opportunity to argue whether or not you're liable. If I understood the question, Judge Moore, we want the court to decide that Georgia Pacific and I'm sorry, international paper and Weyerhaeuser were not liable based upon this court's ruling. And that would affect how things happen under the cost sharing agreements. Well, why would we be saying you're not liable as opposed to saying that the claims that Georgia Pacific raised were untimely, which is what we said in the prior case? I don't know how we would say you're not liable. Well, fair enough. Thank you. I misspoke. What we really want is for the judgment, the declaratory judgment to be dismissed. There shouldn't be a judgment when there was no one of seven action. You know, this case has been going on forever. I have been on this case for more than 20 years, more than 25 years, one way or another. And for you and Weyerhaeuser, who the district court said conceded liability to say now you just don't want even the simple statement that you are liable, not even saying it's one percent liable or point zero five percent liable. You just don't want you want to be able to relitigate from the get go when this has been going on forever. And there's nothing wrong with what the district court did in saying you're liable, except this argument that, well, because of the timing problem, we overturned the particulars last time around. I I'm just sort of stunned what companies that that clearly let PCBs go into this river are saying they're not liable. Well, Judge Moore, I believe you're the only person on earth who's been on this case longer than I have been. And I will tell you, I still have a very good argument, I believe, which I brought to this court as one of two alternative arguments. My secure creditor exemption defense, which would say I'm not liable. This court, I think last time decided they don't have to decide that issue because the statute of limitations said the action should be dismissed. You know, I, I, I was the one who spent a lot of time in trial with Judge Yonker. And I will say just practically the liability phase is very small compared to the allocation phase that we tried the allocation phase over four months. We tried the liability phase in less than eight days. And that was when Internet or when NCR was still in the case. But I have never had a chance to have this court adjudicate my secured creditor defense. If this court enters that declaratory judgment or allows the declaratory judgment to be entered, I'll be foreclosed from ever raising that in subsequent cases. They will say, no, you're a stop because there's already a judgment of liability against you. And I think that would be incredibly unfair to my client. Thank you. Thank you. Thank you. Ms. Rice. Good afternoon, Your Honors, and may it please the court. My name is Amanda Rice and I represent Georgia Pacific. Let's just start with what my friends on the other side largely ignored, which is the actual words of Section 113 G2. That provision says that in any action described in this subsection, the court shall enter a declaratory judgment on liability. None of those words are subsection. Well, I don't mean to cut you right off. So go ahead. Go ahead. It says subsection. And in in the sections around the one we're looking at, usually when it says subsection, it seems like it's referring to the to like it would be the G here. Is that is that fair? Or is that your understanding of what subsection means? I think that the subsection is referring to Section 107. Well, that would be a section, though. That's right. But so subsection two starts. The first sentence of it is an initial action for recovery of the cost referred to. Right. Section nine, six or seven. In Section 9607. So that's a section. Yeah. And then when we get down to the language you're quoting, it says in any such action described in this subsection. So I guess I mean, I, I think all of us have read the text and we were mindful of your argument. I just wonder. I mean, this subsection G is entitled and. Period in which action may be brought. And to itself is saying that actions must be commenced within a certain time. And I guess one question I have with respect to this argument is when we're talking about, you know, what are the actions described in this subsection? Basically, why wouldn't that be timely actions that are being described in this subsection? That tells us when an action must be brought. So I think this court's opinion in Gen Court might be helpful to your question, Judge Ketledge. In Gen Court, this court addressed whether the declaratory judgment provision G2 applies in cases seeking only contribution costs. So actions brought, you might say, under 113 as opposed to 107. And the court said, look, the way this statute works is the pieces relate together. It's not, some judges have lamented that it's not necessarily the most straightforward statute to interpret. But the way this works is whether you're bringing a contribution action under 113 or an initial cost recovery action in the 107, excuse me, liability is still established under 107. And so G2 applies even in those 113 cases. But I guess I'm looking at G2 and it's talking about this subsection and actions it's describing, one could argue, are timely actions. And so, you know, why doesn't that comport with what seems to me kind of a common sense point that district courts normally don't need to proceed to render declaratory judgments as to claims that are time barred. So the statute says in any action, Congress, I understand that. Any such action described in the subsection, it's not any action. It's any such action described in the subsection. Even if that were the way that you decided to construe the statute, Judge Catledge, I think your questions about the scope of the 1998 judgment are valid. I'm not asking about that right now, though. I'm asking, I mean, you, I mean, you basically put kind of all your chips on this textual point. And I just I'm I'm inviting, you know, an explanation as to why time barred actions are included in such action described in this subsection, which is saying you must file this thing within three years of completion of the removal action, for example. I read any such action to refer back to the first section, first sentence of subsection two and an initial action for the recovery of costs. But the next word after action is described. And I would suggest that that that phrase is restricting action. Unless I'm just I mean, I could be wrong, but no, no, I think you're certainly right. The two subsections that follow are subsections A and B set out statutes of limitations. But the language Congress uses any action described, it doesn't say timely action. And, you know, I think that. OK, I mean, I guess how any action described in this subsection? I mean, and I'll relent after this. Why isn't that, you know, timely actions? This is the subsection. It's describing timing requirements. Why doesn't this mean timely actions? Even if you think it does mean timely actions. OK, so I think the best answer is that it says in any action. The two provisions sort of sub sub A and sub sub B set out statutes of limitations. Those are two reasons why claims might fail in any action. There are lots of others. Costs might not conform to the to the to the national contingency plan costs. Maybe it might not be equitable to allocate certain costs. There's lots of reasons why things fail, but it's still an action under 107. And I'm not sure it's possible to read in any such action described in this subsection to mean any timely action. That just would be a strange way for Congress to write that statute. Even if you are correct that it doesn't have to be timely. Is it an initial action for recovery of costs referred to in Section 107? If under Hobart, we have said that it had to be a contribution action under 113 F. Yes, it is, Your Honor. And I think, you know, I'm going to answer that in two parts. Firstly, I think that's very clear as to the area that's outside the scope of the 1998 judgment. This is an initial action as to that area outside the NPL site, the initial judgment. But beyond that, I think this court held in the last opinion that our claims with respect to the 1998 judgment site were time barred. But in the same opinion, this court itself describes it as an action under 107 and 113. That was the action that we brought. And the fact that the particular cost claims that we brought were untimely, we weren't able to recover costs, doesn't mean that this wasn't an action under 107 to begin with. And I'll sort of add, as I was explaining to Judge Kethledge, I think this court's opinion in GenCorp kind of teases out the relationship between 113 and 107. So even if the sort of instinct you have from Hobart is that this was a 113 action, not a 107 action, again, I think that's not right, at least as to this part of the area that's outside the scope of the KRSG judgment. But even within the judgment, a 113 action still is covered by G2. Okay, so what is there beyond the KRSG judgment that's involved here? So the KRSG judgment covered a 38-mile area, 35 miles of the Kalamazoo River, three miles of Portage Creek. We know that because the court defined the term NPL site in the opinion. It said NPL site means X, and X is the 38 miles. And then it entered judgment with respect to that 38 miles. There's a much broader site that we're talking about now. It's sort of 95 miles, it's an 80-mile stretch of the river, and then there's some adjacent areas. That's exactly the scope of the district court's order in this case. The order on remand refers to 80 miles of the river, three miles of Portage Creek, and various waste disposal areas nearby. So all of that other stuff, the sort of 95 miles minus the 38 miles, is the area we're talking about that's outside of the judgment. I thought that there were references to more than the 35 or 38 miles in various district court opinions. So what should we do with those various references? That's right, Your Honor. These references are mostly referred to a study that the KRSG group undertook with respect to the broader area. So the court describes that broader area. But in entering the judgment, both in 1998 and in 2000, the court's very clear. It defines the term NPL site and then enters judgment as to that area. There were some factual issues and historical points the court observed with respect to the broader area, but the judgment itself was limited to that site. I think that's clearest in the 1998 judgment. That's at page ID 22293, that's where the judgment is. And then the definition of the NPL site term is at page 22284, but the same language recurs in the 2000 judgment. Well, I mean, this issue isn't really briefed in a plenary fashion, I guess, in this appeal, though. I mean, I'm relatively new to this case, but I mean, there's not a lot of focused attention to the geographic, what that scope is. So, Your Honor, that's because I think both sides agree that you don't necessarily need to reach that issue. And I'll tell you why. It's because even within the scope of the judgment, it's clear. I don't think anyone disputes that there are future costs to be incurred. Well, OK, but I mean, I thought we already said you can't get those. What am I misunderstanding? So that's correct. We can't recover costs within the judgment. But IP, warehouser, any other PRP can. IP has already filed a suit seeking to recover costs. And I think my friend just clarified that those are within the scope of the 1998 judgment. So I think that's the reason why you don't need to reach this issue. But the other reason we didn't spend too much time on it, Your Honor, is because I think it's pretty clear. When courts define a term and then enter a judgment using the defined term, they usually mean what they say. This wasn't casual language in the opinion. Here's the site. This is the definition. And here's the judgment that's entered. So I'm not sure there's too much more to say about that other than to look at the actual opinions themselves and judgments that were entered. Compare that. Sorry, go ahead. So you, as Georgia-Pacific, cannot recover costs for the KRSG site against anybody else. But they can recover costs that are within the 98 KRSG litigation against you? I think that's right, Your Honor, with the caveat that we may well have other defenses in any case like that. But yes, you held last time that we can't recover costs in the judgment. Our 113 claims are time barred and we can't pursue a 107 claim under Hobart. So that's what you held last time. But other parties who are not barred by Hobart, they would have a 107 claim. So IP doesn't have a declaratory judgment or at least didn't until this case running against them, which is why they're able to file a suit within the scope of that judgment. So if we were to uphold the district court's determination that IP and Weyerhaeuser are liable as well as Georgia-Pacific being liable, would that trigger then the three-year statute for 113 claims against all three of you? I think it would, Your Honor. I think that would mean if you uphold the judgment, the claims that would be remaining for any of the parties subject to the judgment would be 113 contribution claims. I think that's the same logic you used last time when you faced a bare declaratory judgment and held that that started the statute of limitations running. Isn't that a desirable resolution then in that it will say to everybody among the three of you, make your claims now for what you think are the liabilities of people going forward? I think that's right, Judge Moore. And as you recognized in your questions earlier, it preserves the work that's already been done in this case. And I think it's exactly how CERCLA was designed to work. In these cases, what courts do first is they adjudicate liability, and that can take its own trial and can take years to settle liability. And the design of the statute is that liability determination will govern going forward. As you held last time, that kickstarts the statute of limitations, even if no costs have been awarded. So yeah, I think that that's an important upshot of the district court's declaratory judgment. It starts the statute of limitations running for anyone to recover costs within the scope of the broader declaratory judgment that the district court issued in this case. Did Weyerhaeuser in fact concede liability earlier? I asked your opponent that question and he said no, it was not a concession. If it is, where is the concession? Yes, the district court has reiterated that in the remand. I don't have an insight for you for where that first happened in the record below, but yes, the understanding in this case has always been that Weyerhaeuser conceded liability. Even in the appeal last time around, Weyerhaeuser did not dispute liability, didn't even join the statute of limitations portion of international papers argument. It was only international paper that was disputing liability, both in the district court and on appeal. So are they sort of barred by law of the case for having failed to make an argument? I think so. I think that it's pretty difficult to say out of one side of your mouth that you sort of conceded liability and out of the other that actually the district court didn't have any authority to hold you liable. Sort of the same law of the case logic, I think, causes them problems. The whole point of their argument last time was that a barred declaratory judgment from 1998 started the limitations period running and precluded us from bringing any claims. And now they've turned around and argued that there's actually no such thing as a barred declaratory judgment. So I think that's right, Judge Warren. Why isn't international paper entitled to a marriage adjudication on its security creditor defense before we have a final declaratory judgment here saying they're jointly and separately liable for all the costs in this site? As you found after the rehearing petition last time, Judge Kemledge, the choice international paper made on appeal was to challenge only the cost awards. And it challenged the cost award on two different grounds, which it presented as alternative grounds. So you can decide statute of limitations or you can decide secured creditor. Those were alternative grounds with respect to the cost award, which is why we don't think the declaratory judgment was being challenged at all in that appeal. But that was the choice that they made. And you sort of held them to that choice, I think, fairly in the appendix attached to the opinion. OK. Well, OK. Could they have argued that here today in their briefs? I know they didn't argue the merits of the secured creditor, but could they have argued the merits of the secured creditor issue? And then you would have to join in on rebutting that? I don't think so, Your Honor. They didn't raise it in the district court either. So perhaps if they had brought this back up in the district court and sought to challenge it there and then sought to challenge it in this court, but they didn't do either of those things. So maybe theoretically they could have if they'd raised it in the district court. But I think they've let this argument go. They presented two alternative arguments, say one on statute of limitations. And so their secured creditor argument sort of been forfeited from there. So I just want to make sure I understand your argument. You're basically just saying that notwithstanding that all of the costs that were predicate costs for this 107-113 action that gets filed in 2011, notwithstanding that, you know, for our decision last time, all those costs were time barred. All the predicate costs. The district court was still obligated, you know, for the textual reasons that you explained, is still obligated to proceed to enter a declaratory judgment that adjudicates future costs. Is that your position? That is our position, Judge Kothledge, but I think two important caveats. One is that Article 3 is always a limitation here. So if there's no possibility of future costs, there can't be a declaratory judgment. I understand that. And the second is we'd have to establish liability on the merits. So I don't think this is a context in which we're worried about frivolous claims and people getting declaratory judgments. You need an actual likelihood of future costs. And so your friends on the other side say, well, that mandate doesn't apply when the action is time barred, when the predicate costs, I guess, are time barred. And I am sympathetic to the idea that that is a relevant background principle here. And I wonder if your argument mistakes what we call textualism for literalism. I mean, you know, a background principle is perfectly legitimate and relevant context. If that principle is, in fact, an assumption that an ordinary reader or the relevant reader of a provision would bring to his or her understanding of that document. I mean, like Chisholm from the Supreme Court case from 1793. You know, like you couldn't have a clearer case textually than Article 3 saying federal courts have jurisdiction over suits between a state and a citizen of another state, period. I mean, it couldn't be clearer. But I think most people, after the fact, would say the court was wrong to say that federal courts had jurisdiction absent the state's consent and that Justice Iredell in dissent was right. And we have the 11th Amendment set the record to this day for the quickest ratification. It was because Iredell descriptively was totally correct that that was an assumption that everyone, nearly everybody, would bring to the text. And I wonder why isn't this akin to that? Where, you know, the idea that a district court, even with this exact language, I know what the statute says, but that the idea that a district court must enter a declaratory judgment in a time-barred action, setting aside that this whole thing, this very provision is about time-bars. I mean, why isn't that an assumption that most people would bring to reading a provision like this? Why is that so crazy? I'm not sure it's crazy, Judge Kethledge, but respectfully, I think it's wrong as applied to this statute. You're right that there's a default rule about how declaratory judgments operate under the Declaratory Judgment Act, but this is an unusual statute. Judge Moore has been here for 25 years. We've all been here for a long time. These cleanups are unusual. They're difficult, they take a long time, they cost a lot of money, and there are a lot of people involved. I don't think Congress needed to put in a provision into this statute to just codify existing principles about how declaratory judgments work. They put this provision in, this particular provision in, because it understood that these circular cleanups take decades and implicate a bunch of people, and the declaratory judgment mechanism is really important for those cleanups. And I think particularly in light of your prior opinion, as Judge Moore recognized, it means that the statute of limitations starts running and we're going to be getting to an end of this stuff. I mean, all that could be true, but it could also be true that you also need a timely action in order to do all those salutary things. Sometimes, Judge Ketledge, I understand my friend on the other side to be making a distinction about causes of action and not causes of action that sort of sounds like jurisdictional issues, but not versus not jurisdictional issues. That's not what I'm talking about. You're sort of isolating the statute of limitations limitation as opposed to anything else. No, I'm just saying that it strikes me as quite plausible that that is a background principle that a reader of this very provision would bring. That, yeah, the district court shall enter it, assuming it's not time-barred. Let me ask you this. Are you aware of any case under this statute or any other statute where a district court entered a declaratory judgment adjudicating prospective liability when the claim itself was time-barred? Has this ever happened before? I'm not sure it has happened in exactly this way, Your Honor, but lots of courts have held, including the First and the Tenth Circuits have held that a viable cost claim is not a prerequisite. In some of these cases, courts don't even adjudicate the cost claim. There's no cost claim at all. They just get a declaratory judgment. You can come to court and just get a declaratory judgment under this statute. Well, I don't know if you can get it if your predicate cost is time-barred, but okay. I mean, I guess I've never seen this before. I've never seen a statute read that way before. So, I mean, I guess you're not aware of a case where a court supposedly had this obligation to do potentially a trial and a declaratory judgment upon filing of a time-barred claim. No, Your Honor, but that's because these trials happen before anyone adjudicates the actual costs, right? And Tinney in the Tenth Circuit said expressly that you can seek only a declaration, so no claim for costs at all. It's just courts don't even get to the question whether a cost claim is time-barred until after they've established liability. And there are some reasons that a cost claim might fail that also undermine liability. But this isn't one of them. And I guess I would also just point out again, Judge Gatlins, which is where you started, that part of this claim was not time-barred, the part outside the scope of the 1998 declaration. But you didn't have any actual incurred costs outside the original area, right? So, I think we did have some claims for incurred costs that were outside that original area. The bulk of the costs were within that area, and we've not attempted to defend our cost claims on the ground that they were outside the scope of the judgment. This is addressed in our remand brief at page ID 35 or 39 if you're interested in it. Okay. I'll look that up. Has the Kalamazoo River been cleaned up? Not yet, unfortunately. There's more. We're working on it. But I think there's years more left in this cleanup. So, are people, various companies, actively engaged in cleaning up? Yes, yes. And the way these cleanups work, there are sections and specific areas, and each of them is sort of addressed separately. In some places, including outside the scope of the 1998 judgment, it's not yet clear exactly what kind of remediation will be necessary, whether, for example, Lake Allegan will need to be dredged or not, and those kinds of decisions which the government makes really affect the costs of these things. So, it's an in-process process, but some cleanup has been done and has been ongoing for decades now. So, what percentage would you say of the PCBs have been cleaned up? I don't know the answer to that, Judge Moore. I don't think we're at the halfway mark. We certainly aren't yet in terms of incurred costs. Any further questions? No, thank you. Thank you. I think we have rebuttal. Thank you, Your Honor. I think my friend acknowledged that Georgia Pacific is here asking for something that has never been done by any other court. Just come back to basic principles of civil procedure. If you don't have a properly stated cause of action, you can't get the remedy of a judgment from a court. Judgments, like all other declaratory judgments, like all other kinds of remedies, follow causes of action. And the text of this provision reinforces that. Yes, a court is supposed to enter a declaratory judgment of liability, but only, quote, in any such action described in this subsection. My friend, Ms. Rice, and I both agree that that refers to an initial action for recovery of the costs referred to in Section 107. Wasn't this an initial action for costs under 107? That's what it's labeled as. It was pleaded that way, Judge Moore, but Hobart makes clear that that pleading was a legal nullity. The holding of Hobart is that when Georgia Pacific attempted to plead a 107 cause of action, that was a legally defective cause of action. Hobart's holding and this court's holding last time is that Georgia Pacific's only viable cause of action is under Section 113F, and Georgia Pacific missed the statute of limitations for that. I think the structural reason why you can be confident that an untimely cause of action cannot support a declaratory judgment of liability is that the first part of 113G2 refers to an initial action for recovery under 107, and then it proceeds immediately to describe the statute of limitations requirements. And then only after having laid out what makes a 107 action timely does it come to the part of the statute where there's a destruction to enter a declaratory judgment. All of that adds up to the simple point that if you're a party like GP that does not have a 107 cause of action, this cannot be an initial action for recovery of the costs referred to in Section 107. And that's why I think this court's prior opinion said clearly at page 548, this goes to any question about what was decided last time when this case was before this court. Here's what the court said, page 548, quote, GP cannot pursue its 107A claims for any costs that fall within the scope of the 1998 KRSG judgment. Now, my friend also explained that Georgia Pacific has not attempted in this case, they didn't attempt on remand to determine which part of their costs were within the KRSG judgment and which are without. If they want to attempt to bring a new Section 107 action to carve that out and say, look, this is a new 107A action that is outside the scope of what was decided in 1998 in KRSG, they're obviously free to plead that, but that is going to have to happen if there's no case that the possibility of those costs cannot support this judgment, which very clearly all parties agree is about determining liability for costs within the scope of the 1998 KRSG judgment. Other point on that is that Georgia Pacific's own en banc petition understood that this court reversed the entire judgment last time around. Urge the court to take a look at page 2 of that brief. It said, quote, this is Georgia Pacific's words, this court reversed the entire judgment, end quote, including, quote, the trial court's declaratory judgment of international papers liability. Georgia Pacific understood when it read this court's opinion that this court had reversed the entire judgment of liability, including the declaratory judgment, and that's because that's the clear understanding of this court's opinion implementing the court's prior precedent in Hobart. If I may, Mr. Houston, I mean, if we look at G2, and it says an initial action for recovery of the cost, I had to turn the lights off in here, otherwise it's like, you know, everything's lit up, so I'm having a hard time reading. Initial recovery, sorry, initial action for recovery of the cost referred to in section 9607 must be commenced thus and so. And the question here is, I mean, you're saying that this doesn't count as such an action, what I just read, right? That's correct, your honor, yes. Just doesn't even count as that. Correct. And I wonder, I mean, the phrase recovery of the cost referred to in, you know, 9607, why couldn't that, why doesn't that mean potentially it's describing a category of costs rather than, you know, specific expenses actually incurred in a, you know, in a particular instance. It's just, if you're asking for that kind of category of costs, then it is this kind of action. I mean, if we're talking about the action described. Now I know that, you know, there's the time bar stuff, but I just want to focus on this part of it. And if you understand what, you know, what I'm trying to say. I think I do, your honor. Is it a categorical description or is it specific to, you know, the particular bill that they're asserting, so to speak? Understood, your honor. So I think yourself, myself, and Ms. Rice all agree that the phrase such action described in this subsection refers back to that very first clause of 113 G2. I honestly think the right way to determine the meaning of that first clause is to just sort of read it and take a step back and ask what it's getting at. An initial action for recovery of the costs referred to in section 9607 of this title. I think the right way to understand the case really is to say, is this, and I think this is frankly how Judge Moore put it earlier in her question to me. Is this an initial action for recovery of the costs referred to in section 9607? Did Georgia Pacific bring a cost recovery action under section 9607? In other words, I think that's the fair, I think that's the fairest reading of that text. So the question before you is, is this a 9607 action? And the answer is no. Yes, Georgia Pacific pleaded 9607, but that was a legal nullity. If we had had Hobart, if Hobart had been on the books at the time that this pleading was filed by Georgia Pacific, we would have made a motion to dismiss the section 107 claim for failure to state a claim for relief. And we would have simply said, Hobart clearly says, Georgia Pacific, you have no 107 cause of action. You have only a 113 cause of action. If Hobart fails for a different problem, it's time barred under the statute of limitations. And that's clearly what Hobart held. That's the end of the case here. Excuse me. Hobart was decided, and I actually will confess that I wrote it, in 2014. That's correct, Jo. Okay, so a lot of this case that's in front of us right now occurred subsequent to 2014. Yes, that's true. Did you make the argument that the whole of the case should be dismissed, including this ruling that the district judge made early on assessing liability among all three of you? Yes, absolutely. When did phase one occur? When was the phase one decision? Do you remember that? I'm sorry, Judge Moore. I don't know that off the top of my head. I think if you give me just a few seconds, I can get it for you. The phase one... No. The phase one bench trial opinion was entered by the district court in 2013.  So, at that point, I'm sorry, Judge Moore. IP was found liable. Weyerhaeuser had conceded liability. All of that was in the 2013 decision. Yes, Weyerhaeuser had conceded liability subject to its statute of limitations defense that the district court had, by that point, rejected, of course, incorrectly. So then Hobart comes out in 2014. And then when is it that you all argue that the KRSG judgment precludes any contribution action by GP? Well, I think two points about that, Judge Moore. The first is that before we got to the point of the case that you're mentioning, the parties had already asserted that there was a defect in Georgia-Pacific claims. The international paper and Weyerhaeuser asserted the statute of limitations as a defense at the beginning of this case. Judge Yonker had rejected those defenses. We then proceeded to a phase one judgment. Thereafter, international paper and Weyerhaeuser, I believe, moved for summary judgment, explaining to the district court that he was required to reject the liability, to refuse to award judgment in favor of Georgia-Pacific on the basis of the clarification of the statute. That was then the argument. We lost. Judge Yonker rejected our summary judgment arguments. We appealed to this court. This court agreed with us. And again, I think that's what this court held. You can see that in the court's own opinion. You can see that in how GP understood the court's opinion immediately after it came out. And if I might just make one point about... Because we've taken you way over your rebuttal time. Judge Moore, I just wanted to address your question about Weyerhaeuser, which was the court determined in your question to my friend, Ms. Rice, about Weyerhaeuser, which was when the court last considered this appeal, it held, of course, after extensive briefing and discussion on the topic, that the statute of limitations argument, based on Hobart and based on the text that was made by international paper, that Weyerhaeuser was also entitled to the benefit of that ruling, and that holding is the law of the case. That's the reason why this court needs to reverse the judgment entered by the district court as to both international paper and Weyerhaeuser. Thank you. Well, thank all of you for your argument. As you could tell from my questions, it seems really... I'm speaking only for myself. It really seems sad to think about all of this litigation and the money expended in the litigation and how the river needs to be cleaned up. But obviously, we each have our job to do. And this panel takes seriously all of the arguments that you all have made. It's a very difficult case, and we will deliberate and issue our decision in due course. And thank you all for your very professional efforts in the arguments today. It's a very well-done argument on everyone's side. So thank you.